**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seeling (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____

DANIELA QUIROZ and
GILBERT HERNANDEZ,
*on behalf of themselves and others similarly situated*,

            Plaintiff,                           Case No.:

                                        **FIRST AMENDED COMPLAINT**

           v.                              **JURY TRIAL DEMANDED**

APPLE & EVE, LLC

            Defendant.
_____

Plaintiffs DANIELA QUIROZ and GILBERT HERNANDEZ (herein "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, APPLE & EVE, LLC ("Defendant" or "Apple & Eve"), allege the following:

## NATURE OF THE ACTION

      1.     This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its Products (defined in paragraph 5 below) as 1) having "No Sugar Added" and 2) claiming "[No] preservatives have been added".

      2.     The Products' "[No] preservatives have been added" representations are deceptive because they contain the preservatives citric acid and/or ascorbic acid. This labeling deceives

consumers into thinking they are receiving healthier preservative-free products even though the products cannot live up to these claims.

3.      The Products' "No Sugar Added" representations are misleading because they lead consumers to think they are getting a low calorie product when they are not. Defendant's Products actually have a high calorie count when compared to competitors' products that do not have the "No Sugar Added" claim.

4.      Defendant's "No Sugar Added" and "[No] preservatives have been added" labeling deceives consumers into thinking they are receiving a healthier, lower-calorie juice, when they are not. Conscious of consumers' increased interest in more nutritious beverages, growing concern over excessive sugar, and consumer willingness to pay more for products perceived to meet these interests, Defendant misleadingly, illegally, and deceptively seeks to capitalize on consumer health trends.

5.      Defendant sold and continues to sell juice Products with deceptive or misleading labeling. These are:

   a.  Apple & Eve 100% Cranberry Raspberry (ascorbic acid) (all sizes) *See* **EXHIBIT A.**
   b.  Apple & Eve 100% Very Berry Juice (citric acid and ascorbic acid) (all sizes) *See* **EXHIBIT B.**
   c.  Apple & Eve 100% Cranberry Apple Juice (citric acid and ascorbic acid) (all sizes) *See* **EXHIBIT C.**
   d.  Apple & Eve 100% Apple Juice (ascorbic acid) (all sizes) *See* **EXHIBIT D.**
   e.  Any other Apple & Eve juice product that (1) claims that no preservatives have been added despite containing citric acid, ascorbic acid, and/ or any other preservatives (2) claims that no sugar has been added but does not have a significantly reduced calorie count.

Collectively, "the Products" and individually, a "Product".

6.      Defendant engages in deceptive labeling practices by expressly representing on their Product boxes that the Products have "No Sugar Added" and "[No] preservatives have been

added." Defendant wrongfully capitalizes on, and reaps enormous profits from, health conscious consumers' strong preference for drink products made free of preservatives and lower in caloric value.

7.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

8.      Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of New York, California, the other 49 states, and the District of Columbia.

9.      Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

4

Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $5,000,000 and is between citizens of different states.

11.     Furthermore, this court has personal jurisdiction over Defendant because their Products are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant  engages in substantial and not isolated activity within New York State.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and Defendant is subject to personal jurisdiction in this District because its principal place of business is located in Port Washington, NY.

## PARTIES

### *Plaintiffs*

13.     Plaintiff DANIELA QUIROZ is, and at all times relevant hereto has been, a citizen of New York and a resident of Kings County. On September 25, 2017, Plaintiff QUIROZ purchased an eight-pack of 6.75 FL OZ boxes of Apple & Eve Cranberry Raspberry Juice at a Food Bazaar store in Jackson Heights Queens, for the price of $2.99. Plaintiff QUIROZ purchased the Product relying on Defendant's representations on the Product's packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff QUIROZ was injured when she paid money for a beverage that did not deliver the qualities it promised and misled her as to its contents.

She paid the above sum on the assumption that she was purchasing a lower calorie, preservative-free Product. She would not have been willing to pay this sum had she known it was mislabeled. Defendant's "No Sugar Added" labeling misled Plaintiff into thinking that the Product has a lower caloric value than its competitors, when in fact the Product has a similar or higher caloric value. Defendant also deceived Plaintiff QUIROZ into believing she was purchasing a preservative-free beverage. The Defendant delivered a Product of significantly less value, thereby depriving her of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial. Further, should Plaintiff QUIROZ encounter the Products in the future, she could not rely on the truthfulness of the packaging, without corrective changes to the packaging and the advertising of the Products.

14.     Plaintiff GILBERT HERNANDEZ is, and at all times relevant hereto has been, a citizen of the State of California and a resident of Los Angeles County. On November 15, 2017, Plaintiff HERNANDEZ purchased an 8-pack of 6.75 FL OZ boxes of Apple & Eve Apple Juice. Plaintiff HERNANDEZ purchased the product from a Ralphs Store in Los Angeles for the price of $3.99. Plaintiff HERNANDEZ purchased the products in reliance of Defendant's representations made on the Product's packaging. As the result of Defendant's deceptive conduct as alleged herein, Plaintiff HERNANDEZ was injured when he paid money for a beverage that did not deliver the qualities it promised and misled him as to its contents. He paid the above sum on the assumption that he was purchasing a lower calorie, preservative-free Product. He would not have been willing to pay this sum had he known it was mislabeled. Defendant's "No Sugar Added" labeling misled Plaintiff HERNANDEZ into thinking that the Product has a lower caloric value than its competitors, when in fact the Product has a similar or higher caloric value. Defendant's labeling also deceived Plaintiff HERNANDEZ into believing he was purchasing a preservative-

6

free beverage. The Defendant delivered a Product of significantly less value, thereby depriving him of the benefit of his bargain and injuring him in an amount up to the purchase price. Damages can be calculated through expert testimony at trial. Further, should Plaintiff HERNANDEZ encounter the Products in the future, he could not rely on the truthfulness of the packaging, without corrective changes to the packaging and the advertising of the Products.

***Defendants***

15.     Defendant APPLE & EVE is organized under the laws of Delaware with its principal place of business and address for service of process at 2 Seaview Blvd, Port Washington, New York, 11050.

16.     Defendant develops, markets and sells beverage products under the "Apple & Eve" brand name throughout the United States.  Defendant also manufactures, markets, advertises and sells its' extensive juice Products across the United States. The Products are available at numerous supermarkets, retail, and online outlets such as Walmart, Safeway, CVS, Ralphs, Stop & Shop and Amazon.com.

17.     The advertising for the Products, relied upon by Plaintiffs, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to encourage consumers to purchase the Products, and misleads the reasonable consumer, i.e. Plaintiffs and the Class. Defendant owns, manufacture and distributes the Products, and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### Defendant's "No Sugar Added" Representation Is Misleading To Reasonable Consumers

18.     Defendant mislabels its Products as having "No Sugar Added" both on its website and on the front of the packaging.

19.     However, the "No Sugar Added" statement misleads consumers into thinking that they are receiving products that are healthier and lower in calories. The Products actually have more calories than some of its' competitors' products that contain sugar and do not use the "No Sugar Added" claim.

20. Defendant's "No Sugar Added" representations induce reasonable consumers into thinking that a higher calorie product is actually low-calorie, and to choose the higher calorie product over the lower calorie alternatives.

21.     Consumers associate claims about the absence of sugar with lower calorie counts when there is no disclaimer stating otherwise. The FDA has reached the same conclusion:

> Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

21 C.F.R. § 101.60(c)(1)

22. A study done by food scientists published in the Nutrition Bulletin concluded that consumers associate sugar claims with the amount of calories in a product:

> Participants felt deceived if sugar reduction claims were being made without a significant reduction in calories, and this was also seen as a frustrating revelation for those on a weight loss diet. [Consumers] clearly link sugar to calories and therefore expect a reduction in sugar content to deliver a reduction in calorie content, and they felt misled if this was not the case.[1]

---

[1] http://onlinelibrary.wiley.com/doi/10.1111/j.1467-3010.2012.01958.x/full?wol1URL=/doi/10.1111/j.1467-3010.2012.01958.x/full&regionCode=US-NY&identityKey=f6009ec0-106d-4765-97f6-ae3e3afb653f

23.     The "Handbook of Functional Beverages and Human Health", a book published by CRC Press, further shows consumers' rightful association and expectation of low sugar content in beverages, with lower caloric value:

> [C]onsumers were also concerned about the high caloric content of functional beverages… The health benefits of functional beverages were considered valuable marketing cues by both focus group participants and interviewees. The most important health benefits that would encourage purchase of functional beverages were *enhancing the immune system, aiding the digestion, lowering cholesterol*, and having *high fiber* and *reduced sugar*.[2]

24.     A comparison of Defendant's Products to competitors' products shows that the Products are not low-calorie. For example, V8 Splash Tropical Blend product for example, does not have the "No Sugar Added" claim on its' label. When adjusting for serving size, The Products have approximately 100 calories per 200 ML serving whereas V8 has 58.3 calories per 200 ML serving. A reasonable consumer would choose the Products over V8 juice based on Defendant's labels. *See* **Exhibit H**.

25.     Similarly, Capri Sun Fruit Punch Juice does not have the "No Sugar Added" claim on its' label. The Products have approximately 100 calories per 200 ML serving whereas Capri Sun has 56.5 calories per 200 ML.

26.     Exemplarily, R.W. Knuden Organic Sensible Sippers Apple Juice Product actually has the "No Sugar Added" claim on its front label and contains only 30 calories per serving, 43% less calories than Defendant's Product. *See* **Exhibit J**.

---

[2] Shahidi, Fereidoon, and Cesarettin Alasalvar. Handbook of Functional Beverages and Human Health. Series 11. Page 7. Londres: CRC Press, 2016.

**Defendant's "[No] Preservatives Have Been Added" Representation Is False And Misleading To A Reasonable Consumer**

27.     Defendant misleads consumers into thinking that the Products contain no preservatives with its' false claims on the Product packaging. The Products actually contains citric acid and/or ascorbic acid. *See* **EXHIBITS A-D**.

28.     Citric acid is a preservative. The FDA expressly classifies citric acid as a preservative. Citric acid is identified as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | **Ascorbic acid**, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm. (last accessed 07/05/2017)

29.  Ascorbic acid is a preservative. As also shown above, the FDA expressly recognizes ascorbic acid as a preservative. The online magazine livestrong.com explains how ascorbic acid functions as a preservative:

> Preservatives are divided into three categories: Antimicrobials, antioxidants and ascorbic acid. Antimicrobials prevent bacterial, mold and yeast development. Antioxidants preserve fats, keeping them from going rancid. Ascorbic acid, more commonly known as vitamin C, falls in the third group as a preservative that stops foods from continuing to ripen, an aging process that leads to decay.

**About Ascorbic Acid**

Ascorbic acid is a water-soluble vitamin with antioxidant properties. Inside your body, the nutrient preserves cell integrity by neutralizing free radicals, which are toxic molecules that can damage healthy cells and cause disease.

**Preserving Properties**

Ascorbic acid neutralizes oxygen when it comes into contact with it. Oxygen allows foods to continue to ripen, an aging process similar to the one people go through that ends in death. Oxygen is also vital for many microorganisms to thrive, some of which cause decay. Ascorbic acid slows or neutralizes these events. The substance blocks cured meat's propensity to form carcinogens called nitrosamines, for example. In the process, the vitamin also preserves the flesh's red color. In addition, ascorbic acid preserves flavor.

**Food-Preservation Mechanism**

Canned vegetables, bottled juices, jams and other preserved fruit are processed foods manufacturers protect with ascorbic acid. The vitamin's acidity makes it hard for the enzyme phenolase to act. Phenolase accelerates oxidation, a chemical process in which oxygen level rises, resulting in decay. This is also the process that ascorbic acid combats.[3]

30.     The FDA's Warning Letter to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" dated October 6, 2010 further confirms that citric acid and ascorbic acid are preservatives:

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **EXHIBIT E**, FDA Warning Letter dated October 6, 2010 (emphasis added).

31.     Given these trends, Defendant has a natural interest in misrepresenting their Products as free of preservatives despite the presence of citric acid and ascorbic acid, as this

---

[3]   http://www.livestrong.com/article/496950-is-ascorbic-acid-a-preservative/   (last   accessed 01/02/2018)

misrepresentation provides a clear marketing advantage over competitors that do not engage in such deceptive conduct.

**Defendant Has An Intent To Mislead**

32.     Defendant knows that its "No Sugar Added" and "[No] preservatives have been added" representations are misleading and intends that they be relied upon by Plaintiffs and the Class. This is proven by Defendant's other products that are not mislabeled, and reveals Defendant's knowledge that it is misleading consumers.

33.     Defendant properly labels its' Fruitables Very Cherry product as having "No Added Sugar" with an additional claim that the product has 1/3 less sugar than the reference product. The Fruitables juice actually contains 40% fewer calories than the Products. *See* **EXHIBIT F.** Defendant understands what a low-calorie fruit drink is. Correlatively, Defendant also knows what a high-calorie fruit drink is and that the Products fall within the latter category. Defendant understands that consumers associate "No Sugar Added" claims with lower calories, evidenced by the label of its' Fruitables Very Cherry Juice. Hence, Defendant knows that consumers would assume the Products are low in calories. Defendant's labeling of the Fruitables as having "1/3 Less Sugar" reflects its understanding that "No Sugar Added" claims standing alone, have the capacity to mislead. Defendant provides additional information with its Fruitables product to assure consumers that it is not misleading.

34.     Similarly, Defendant's APPLE & EVE Cranberry Juice Cocktail Product contains ascorbic acid, and rightfully does not have the [No] preservatives have been added" on its' packaging. *See* **EXHIBIT G.** Thus, Defendant understands what a preservative is.

35.     Defendant's intent is to purposefully deceive consumers about the Products, and unfairly make large profits through this willful deception.

**Plaintiffs' Consumer Protection Claims Are Consistent With Federal Regulation**

36.    New York, California, and federal law place similar requirements on food companies that are designed to ensure that the claims they make about their products are truthful and accurate. New York, California, and federal laws are violated by Defendant's deceptive "No Sugar Added" and "[No] preservatives have been added" misrepresentations.

*"No Sugar Added"*

37.    21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the phrase "no sugar added":

> (2) The terms "no added sugar," "without added sugar," or "***no sugar added***"
> maybe used only if:
>
> (i) No amount of sugars, as defined in §101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and
>
> (ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and
>
> (iv) The food that it resembles and for which it substitutes normally contains added sugars; and
>
> (v) ***The product bears a statement that the food is not "low calorie" or "calorie reduced" (unless the food meets the requirements for a "low" or "reduced calorie" food) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.***

21 C.F.R. § 101.60(c)(2) (emphasis added)

38.    Defendant's "No Sugar Added" representation violates element (v) of C.F.R. § 101.60(c)(2). Defendant does not disclose that the Products are not "low calorie" or "calorie reduced" foods, since they do not in fact meet the requirements for "low calorie" or "reduced

calorie" foods. Defendant has touted its non-low-calorie products as having "no sugar added" while omitting the mandated disclosure statements.

39.     The Defendant does not satisfy requirement (i) for labeling a food "low calorie" or "calorie reduced" as outlined in the Code of Federal Regulations:

(4) The terms ***"reduced calorie,"*** ''reduced in calories,'' ***calorie reduced***,'' ''fewer calories,'' ***"lower calorie,"*** or ''lower in calories'' may be used on the label or in the labeling of foods, except as limited by § 101.13(j)(1)(i) and except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that:

(i) ***The food contains at least 25 percent fewer calories per reference amount customarily consumed than an appropriate reference food as described in § 101.13(j)(1); and***

(ii) As required in § 101.13(j)(2) for relative claims:

(A) The identity of the reference food and the percent (or fraction) that the calories differ between the two foods are declared in immediate proximity to the most prominent such claim (e.g., reduced calorie cupcakes ''33 1/3 percent fewer calories than regular cupcakes''); and
(B) Quantitative information comparing the level of the nutrient per labeled serving size with that of the reference food that it replaces (e.g., ''Calorie content has been reduced from 150 to 100 calories per serving.'') is declared adjacent to the most prominent claim or to the nutrition label, except that if the nutrition label is on the information panel, the quantitative information may be located elsewhere on the information panel in accordance with § 101.2.

(iii) Claims described in paragraph (b)(4) of this section may not be made on the label or labeling of foods if the reference food meets the definition for ''low calorie.''

21 C.F.R. § 101.60(b)(4)  (emphasis added)

40.     As previously shown, Defendant's Products do **not** contain 25 percent fewer calories than its competitors, and actually have a similar if not higher caloric value than competitors who do not label their products as "No Sugar Added".

41.     Instead of having 25% **fewer** calories than the aforementioned V8's Splash reference juice, Defendant's Products actually have 30% **more** calories, even though V8 Splash juice actually has added sugar. *See* **EXHIBIT H.**

42.     Similarly, instead of having 25% **fewer** calories than the aforementioned Capri Sun's reference juice, Defendant's Products have approximately 29% **more** calories. *See* **EXHIBIT I.**

*"[No] Preservatives have been added"*

43.     Citric acid and ascorbic acid are preservatives as the term is defined by the FDA in 21 C.F.R. § 101.22(a)(5): "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

44.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[4] The scientific evidence and FDA statements cited above establish that citric and ascorbic acids all tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective purposes for which these substances were added to the Products. Citric and ascorbic acids do not fall into any of the regulatory exemptions from the definition of a preservative.

45.     Plaintiffs' claims are not preempted by the FDCA because the definition of "preservative" as used herein is identical with that of the FDA (see above). Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that that are not governed by 21 C.F.R. § 101.13. *See* 21 C.F.R. § 101.65(b)(2). Since the FDA

---

[4] http://www.macmillandictionary.com/us/dictionary/american/tend (last accessed 07/05/2017)

has not issued specific standards governing when "no preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. Accordingly, Plaintiffs's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

46.     The nutrient content claims regulations discussed herein are intended to ensure that consumers are not misled by the actual or relative levels of nutrients in food products. Defendant violates these referenced regulations.

47.     New York, California, and federal law place similar requirements on food companies that are designed to ensure that the claims they make about their products to consumers are truthful and accurate. New York, California, and federal laws were violated by Defendant's deceptive "No Sugar Added" and "[No] preservatives have been added" misrepresentations.

48.     Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded. If its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

49. Defendant's deceptive misrepresentations violate N.Y. Agm. Law § 201, which likewise deems that "[f]ood shall be deemed to be misbranded … If its labeling is false or misleading in any particular…[and] If it bears or contains any artificial flavoring, artificial coloring, or permitted chemical preservative, unless it bears labeling stating that fact…" Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA.

50.     Independently of these, Defendant's deceptive misrepresentations also violate NY GBL § 349, which declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

51.     Defendant's deceptive misrepresentation violates NY GBL § 350, which makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."

52.     Defendant violates California's False Advertising Law ("FAL", California Business & Professions Code § 17500, *et seq.*). California FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever . . . any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

**Plaintiffs And Class Members Were Injured As A Result Of Defendant's Misrepresentation**

53.     By representing that the Products have "[No] preservatives have been added" Defendant seeks to capitalize on consumers' preference for healthier foods and drinks with fewer additives, and the association between these products and a wholesome way of life.

54.     American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[5]

---

[5] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2018) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.

55.     Consumers are willing to pay more for less processed products with no additives because of this association as well as the perceived higher quality, health, and safety benefits associated with preservative-free foods.

56.     The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that **84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods**. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[6]

57.     alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[7]

58.     Research by Transparency Market Research (TMR) shows that consumer preference for low calorie foods is increasing:

> A new market report by Transparency Market Research (TMR), Albany, N.Y., valued the global low-calorie food market at USD $7.4 billion in 2013 and

---

[6] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed(emphasis added(last accessed 01/02/2018)

[7] http://www.alternet.org/food/8-food-trends-watch-2016 (last accessed 01/02/2018)

researchers expect the sector to post a CAGR of 5.9% from 2014 to 2019, to reach an estimated value of USD $10.4 billion in 2019.

TMR researchers note that demand for low-calorie food also is increasing due to changing lifestyles, an increasing number of health conscious people, and growing consumer confidence in low-calorie products due to their natural claims.[8]

59.     Plaintiffs and Class members reasonably relied on Defendant's representation that the Products were rightfully labeled as having "No Sugar Added" and free of preservatives.

60.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products are misbranded and misleading as set forth herein, and would not have bought the Products had they known the truth about them. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).

61.     A representation that a product has no preservatives or no sugar added is material to a reasonable consumer when deciding to purchase it. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendant's Products have "No Sugar Added" or no Preservatives added because it is common knowledge that consumers prefer to avoid foods with higher calories and potentially unhealthy additives (see consumer behavior research above). Moreover, Defendant would not have included the representation on the side label of the Products if it was not going to influence consumer behavior.

62.     Plaintiffs and members of the Class were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were lead to believe were preservative-free with low-calorie content, and then received Products that were preservative-

---

[8]     https://www.preparedfoods.com/articles/114285-low-calorie-market-growth   (last   accessed 01/02/18)

laden and high in calories, which have significantly less value. The Products' lower value is proven by the consumer research above, which shows the higher value consumers attach to products that are lower calories or free of preservatives. Defendant's very inclusion of "No Sugar Added" and "[No] preservatives have been added" on the Products' package is an acknowledgment that this increases the Products' perceived value.

63.    Plaintiffs and members of the Class were thus deprived of the benefit of their bargain.  Plaintiffs and Class members would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth about Defendant's deception.

64.    Plaintiffs and members of the Class were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

65.    *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that Plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendant's "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendant's misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums

that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…")

## CLASS ACTION ALLEGATIONS

66. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

In the alternative, Plaintiff QUIROZ seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

Also in the alternative, Plaintiff HERNANDEZ seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in California during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the California Class").

67. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

68. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

69. This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are

millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

70.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

a.   whether claiming "[No] preservatives have been added" on Products containing citric acid and ascorbic acid is false and misleading;

b.   whether claiming the Products have "No Sugar Added" when they contain a high-caloric count is false and misleading

c.   whether Defendant deprived Plaintiffs and the Classes of the benefit of their bargain because the Products purchased had less value than what Defendant warranted;

d.   whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

e.   whether Defendant should be barred from marketing the Products as having "no sugar added" and claiming that "[No] preservatives have been added."

71.     Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs and other Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal, California, and New York State law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual

underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

72.     Plaintiffs will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

73.     Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Classes.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

75.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds

generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

76. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

77. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

78. Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

79. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

80.     Plaintiffs bring these claim on behalf of themselves and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

81.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

82.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

83.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

84.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

85.     The practices employed by Defendant, in which they advertise, promote, and market their Products as having "No sugar added" and claiming "[No] preservatives have been added" are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

86.     The foregoing deceptive acts and practices were directed at consumers.

87.     Defendant should be enjoined from marketing the Products as having "No Sugar Added" and  claiming "[No] preservatives have been added" pursuant to NY GBL § 349.

88.     Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.


## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

89.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

90.     Plaintiffs bring these claims and on behalf of themselves and other members of the Nationwide Class for Defendant's violations of NY GBL § 349.

91.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

92.     Defendant's business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

93.     Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

    a.     Defendant misrepresents and advertises that the Products have " No Sugar Added" and that "[No] preservatives have been added" with an intent to cause Plaintiff and members of the Classes to believe that they are a healthy alternative in comparison to competitors;

    b.     Defendant caused Plaintiff and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

    c.     Defendant made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were.

94.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as having "No Sugar Added" and claiming "[No] preservatives have been added" to the Products are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

95.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

96.     Defendant's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as millions of others purchasing the Products as a result of and Defendant's generalized course of deception.

97.     The foregoing deceptive acts and practices are directed at consumers.

98.     The foregoing deceptive acts and practices proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and other members of the Class are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

99.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs and further allege as follows:

100.     Plaintiffs brings this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

101.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

102.     Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

103.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the

extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

104. Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue or misleading.

105. Defendant's affirmative misrepresentations of "No Sugar Added" and that "[no] preservatives have been added" are material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

106. Defendant has violated N.Y. Gen. Bus. Law § 350 because its' "[No] preservatives have been added" and "No Sugar Added" misrepresentations were material and likely to deceive a reasonable consumer.

107. Plaintiff QUIROZ and members of the Classes have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

108. Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff QUIROZ and members of the Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
### (Cal. Civ. Code §§ 1750, *et seq.*)

### (Brought Individually and on Behalf of the California Class)

29

109.    Plaintiff HERNANDEZ realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

110.    Plaintiff HERNANDEZ brings this claim individually and on behalf of the other members of the California Class for violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., including § 1761(d).

111.    Plaintiff HERNANDEZ and members of the California Class are consumers who purchased the Products for personal, family or household purposes. Plaintiff HERNANDEZ and members of the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff HERNANDEZ and the members of the California Class are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

112.    Products that Plaintiff HERNANDEZ and other members of the California Class purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

113.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

114.    Defendant violates federal and California law because the Products claim to have no preservatives, when they actually contain citric acid and/or ascorbic acid.

115.    Defendant violates federal and California law because the Products claim to have "No Sugar Added", when they actually have a higher calorie count than competitors' products that do not bear the claim.

116.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have qualities which they do not have.

117.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant's violated and continue to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

118.    Plaintiff HERNANDEZ and members of the California Class suffered injuries caused by Defendant because (a) they were denied the benefit of their bargain due to Defendant's deceptive package misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT V

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (California Business & Professions Code §§ 17200, et seq.)

### (Brought Individually and on Behalf of the California Class)

119.    Plaintiff HERNANDEZ realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

120.    Plaintiff HERNANDEZ brings this claim individually and on behalf of the other members of the California Class for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.

121.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

122.    Defendant violated and continues to violate federal and California law because the Products advertise having no preservatives when they actually contain citric and/or ascorbic acid.

123.    Defendant also violated and continues to violate federal and California law because the Products advertise having "No Sugar Added", which implies they are a healthier lower calorie juice, when they are not.

124.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(d), California Health & Safety Code § 110690, the CLRA, and other applicable law as described herein.

125.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. Defendant's deceptive advertising offends the public policy advanced by the FDCA to ensure that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

126.    Plaintiff HERNANDEZ and members of the California Class are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff

HERNANDEZ and members of the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

127.   Plaintiff HERNANDEZ and members of the California Class lost money or property as a result of Defendant's UCL violations because (a) they were denied the benefit of their bargain due to Defendant's deceptive package misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT VI

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### (California Business & Professions Code §§ 17500, et seq.)

### (Brought Individually and on Behalf of the California Class)

128.   Plaintiff HERNANDEZ realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

129.   Plaintiff HERNANDEZ brings this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

130.   Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

131. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging was intended as inducements to purchase Defendant's Products. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

132. Defendant violates § 17500, *et seq*. by misleading Plaintiff HERNANDEZ and the California Class into believing the Products have no preservatives and lower calorie counts.

133. Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its' representations of the Products were untrue and misleading.

134. Plaintiff HERNANDEZ and the members of the California Class lost money or property as a result of Defendant's FAL violations because (a) they were denied the benefit of their bargain due to Defendant's deceptive label misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT VII

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

135. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

136.    Defendant intentionally makes materially false and misleading representations regarding the composition of the Products.

137.    Plaintiffs and members of the Classes reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain preservatives and have the same or higher caloric value compared to other products without the "No sugar Added" claim. They would not have purchased the Products had they known the truth.

138.    Defendant knew and intended that Plaintiffs and the Class members would rely on its misrepresentations.

139.    Plaintiffs and members of the Classes have been injured as a result of Defendant's fraudulent conduct.

140.    Defendant is liable to Plaintiffs and members of the Classes for damages sustained as a result of Defendant's fraud.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a.    An Order that this action be maintained as a class action, appointing Plaintiffs as representative of the Class members;

b.    An Order appointing the undersigned attorney as Class Counsel in this action;

c.    Restitution and disgorgement of all amounts obtained by Defendant as a result of its' misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class members;

e.  Actual and/or statutory damages for injuries suffered by Plaintiffs and the members of the Classes and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiffs and all members of the Classes, up to the amounts paid for the Products;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: February 5, 2018

Respectfully submitted,

By:    */s/ C.K. Lee*
      C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seeling (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*